**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| GERALD L. EDWARDS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.  4:16-CV-1273-RWS-NAB |
| | ) | |
| CINDY GRIFFITH, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on the amended petition of Missouri state prisoner Gerald L. Edwards ("Edwards" or "Petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 4). This matter was referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the petition be denied.

## I.     Factual and Procedural Background

Petitioner is currently incarcerated at the Missouri Eastern Correctional Center in Pacific, Missouri. After a jury trial in 2011 in the Circuit Court of St. Louis County ("County Case"), Edwards was convicted of two counts of first degree statutory rape of a victim less than 12 years old, one count of first degree statutory rape, two counts of first degree child molestation, and one count of first degree sodomy, and was sentenced to four terms of life imprisonment and two terms of fifteen years, to run concurrently on each count.  (Doc. 18 at 2). Edwards was charged with similar crimes involving the same victim in St. Louis City ("City Case"), to which he pleaded guilty in 2009, and for which he received five terms of twenty years and one term of fifteen years' imprisonment, which are being served concurrently with the

County Case sentence. *Id*. The following evidence, in the light most favorable to the verdict, was presented at trial.[1]

> [Petitioner] began sexually assaulting U.J. (Victim) on a regular basis when she was 10 years old. [Petitioner] was dating and living with Victim's mother (Mother). In 2008, when Victim was 11 years old, Victim's six-year-old brother walked in while [Petitioner] was having sexual intercourse with Victim. Victim's brother told Mother about the incident. Victim initially denied the abuse to Mother and her grandmother, but revealed the abuse to her uncle. Mother took Victim to the hospital and Victim was interviewed by a social worker trained in forensic interviews with children for sexual abuse evaluations. Victim told the social worker the abuse occurred every two days, but would temporarily stop when Victim was menstruating. Victim stated that three days prior to the interview, while Mother was at work, [Petitioner] touched the inside and outside of her vagina, put his penis in her vagina, put his mouth and tongue on her vagina and touched her chest under her clothing with his hand and mouth. Victim stated [Petitioner] pulled his penis out of her vagina before he ejaculated, which he wiped with his own white T-shirt. [Petitioner] told Victim he did this because she was too young to get pregnant. Afterwards, [Petitioner] told her to "wash up, clean up" and [Petitioner] washed the sheets on the bed.
>
> Victim further reported that [Petitioner] had sexual intercourse with her on March 27, 2008, and April 10, 2008. Victim stated the abuse occurred in the City of St. Louis and St. Louis County where Victim lived with [Petitioner]. [Petitioner] told Victim she should not tell anyone if she wanted Mother to stay around. [Petitioner] treated Victim differently than her siblings and bought her expensive gifts like electronics and games. [Petitioner] took Victim on an over-the-road trip for a couple of days. Victim testified she did not tell Mother about the abuse because she was scared.
>
> [Petitioner] subsequently confessed to police to having intercourse with Victim in the City of St. Louis and in St. Louis County. [Petitioner] admitted having sex with Victim two or three times a week and having sex with her while on a trip with her to Illinois. [Petitioner] admitted that Victim's younger brother witnessed the abuse on one occasion. [Petitioner] stated, "I'm glad it's over. I'm relieved the skeleton is out of the closet." Police seized

---

[1] These facts are taken substantially from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision following Edwards' appeal from the denial of his post-conviction Rule 29.15 motion. (Resp't Ex. J). A state court's determination of a factual issue shall be presumed to be correct. 28 U.S.C. § 2254.

> a V-neck T-shirt from [Petitioner]'s home, which tested positive for seminal fluid.
>
> [Petitioner] testified in his own defense and, while denying the charges, admitted he pled guilty to six charges, including statutory rape, statutory sodomy, and child molestation of Victim, in the Circuit Court of the City of St. Louis.

Resp't Ex. J at 2-3.

Following his conviction, Edwards filed a direct appeal. (Resp't Ex. B, C, D). Edwards brought two points on appeal. He asserted that the trial court erred in admitting statements he made to a University City detective and a St. Louis City police officer, because he made them during a custodial interrogation after he had requested counsel. For his second point, he argued that the trial court plainly erred in admitting his guilty plea from the City Case into evidence. *Id*. The Missouri Court of Appeals affirmed the verdict. (Resp't Ex. E).

Following his direct appeal, Edwards filed a Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp't Ex. F). Post-conviction counsel filed an amended motion, arguing that Edwards was denied his right to effective assistance of counsel due to her failure to call Shirley Grady and Angela Grady to testify as character witnesses during his trial. *Id*. The post-conviction motion court held an evidentiary hearing. At the hearing, Shirley Grady testified that she had known Petitioner for 26 years, and that he was active in her church, where he taught Sunday school "because he liked to teach and mentor the children," and that he "loved children" and "would take the children to the park, give them money, and buy them clothes." (Resp't Ex. J at 5). Edwards' trial counsel testified that she interviewed Shirley Grady prior to trial, and her investigator spoke to Angela Grady. *Id*. She further testified that although both of them spoke highly of Edwards, she did not feel that their testimony would have helped Edwards' case. *Id*. She testified that she discussed this decision with Edwards.

3

*Id*. The motion court subsequently denied Edwards' Rule 29.15 motion (Resp't Ex. F), and the Court of Appeals affirmed (Resp't Ex. J).

Edwards then filed his amended Petition for Writ of Habeas Corpus in this court on September 16, 2016, raising five claims for relief: (1) that the trial court erred when it did not suppress evidence of Edwards' statements to a University City detective and to a St. Louis police officer; (2) that the trial court erred by admitting into evidence information about his guilty plea in the City Case; (3) that trial counsel was ineffective due to her failure to call Shirley Grady to testify as a character witness during his trial; (4) that trial counsel was ineffective due to her failure to call Angela Grady to testify as a character witness during his trial; and (5) that his rights under the Double Jeopardy Clause were violated by his conviction in the County Case after being convicted in the City Case. (Doc. 4). The Respondent filed a response in opposition. (Doc. 18). Petitioner filed a traverse (Doc. 21) and the matter is ripe for disposition.

## II.    Legal Standards

### A.    Standard for Reviewing Habeas Corpus Claims on the Merits

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 569 U.S. 413, 421 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's

effective date of April 24, 1996. *Lindh v.  Murphy*, 521 U.S.  320, 326-29 (1997).  In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v.  Andrade*, 538 U.S. 63, 71 (2003).  "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72.  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v.  Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court

decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

### B.    Procedural Default

To preserve a claim for federal habeas review, a state prisoner must present that claim to the state court and allow that court the opportunity to address the claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006) (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). "Where a petitioner fails to follow applicable state procedural rules, any claims not properly raised before the state court are procedurally defaulted." *Id.* The federal habeas court will consider a procedurally defaulted claim only "where the petitioner can establish either cause for the default and actual prejudice, or that the default will result in a fundamental miscarriage of justice." *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 338-39 (1992) and *Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) (en banc)). "The procedural default doctrine and its attendant 'cause and prejudice'

6

standard are 'grounded in concerns of comity and federalism,' *Coleman*, 501 U.S. at 730, and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack. *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986).  To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Id.* at 488.  To establish prejudice, a petitioner must demonstrate that the claimed errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).  Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must "'present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted.'" *Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) (quoting *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006)).

## III.    Discussion

### A.  Ground One

In his petition, in his first ground for relief, Edwards reasserts a claim raised in his direct appeal— that the trial court erred when it did not suppress the second statement Edwards made to University City Detective Lee Hall ("Det. Hall"), and a statement he made to St. Louis police officer Sergeant Mickey Owens ("Sgt. Owens"). Edwards argues that the statements were made during a custodial interrogation after he had clearly requested an attorney. He further argues that because he had not knowingly and intelligently waived his rights and had not reinitiated further communication with the police, their introduction at trial violated his Fifth and Fourteenth Amendment rights. Respondent argues that the state court reasonably found that Edwards' claim

was without merit and this Court should defer to that determination. For the following reasons, the undersigned recommends that Ground One of Edwards' petition be denied.

The Missouri Court of Appeals found the following facts, in the light most favorable to the verdict:

> The victim's mother reported that defendant had sexually abused the victim in University City to a University City police officer. She made a similar report of sexual abuse of the victim in the City of St. Louis to Sergeant Mickey Owens of the St. Louis Metropolitan Police Department. As detailed below, defendant was first interviewed by and made a statement to Detective Lee Hall of the University City Police Department.
>
> After receiving the victim's mother's report, Det. Hall spoke to defendant on the telephone, and defendant voluntarily came to the University City police station that evening, April 29, 2008. Det. Hall informed defendant of the allegations made against him and read the *Miranda* rights to defendant. Defendant executed a *Miranda* form indicating that he understood each of his rights and was willing to talk. Defendant first explained that he thought the victim's mother was trying to get him in trouble. Det. Hall told defendant that the victim had been interviewed by a social worker, and that it appeared the information was not made up but was consistent with an acute sexual assault. He asked defendant if that was the case, how this could have been made up. In response, defendant said "that he had made a mistake with [victim] and that he needed a lawyer." Det. Hall terminated the interview, placed defendant under arrest, and placed him in a holding cell.
>
> The next day, April 30, 2008, Sgt. Owens was notified by Det. Hall that defendant had been placed in custody at the University City police station. Sgt. Owens and a colleague came to the University City Police Station that day to interview defendant and met defendant in an interview room. Sgt. Owens notified defendant of the allegations made against him and explained that he was investigating allegations separate from those was being investigated by the University City Police Department. Sgt. Owens advised defendant of his *Miranda* rights and provided him with a *Miranda* form. Defendant stated that he understood his *Miranda* rights, initialed each right, and signed the waiver form. Sgt. Owens asked defendant if he wanted to waive his rights and speak to him. Defendant answered, "yes," and he said, "I'm sorry for what I did to [victim]." Sgt. Owens asked defendant to explain. Defendant repeated that he was sorry. Defendant

8

acknowledged that he had been alone with the victim while her mother was at work. Sgt. Owens then asked defendant if he had sexual intercourse with the victim. Defendant's response was that he had made a terrible mistake and was sorry for what he did to the victim. Defendant again repeated that he was sorry for what he did to the victim, that she was a good girl, that she would never do anything to get anyone in trouble, but did not explain what he meant. Sgt. Owens asked defendant if he could provide a written explanation. Defendant then wrote the following statement:

I, Gerald Louis Edwards, want to make the following statement: I made a big mistake with [the victim] and I'm very sorry for what I did with her, not by FORCE. I would like to speak with an attorney before going forward with this questioning.

Defendant set his pen down, pushed the paper to Sgt. Owens, and said he did not want to say anything else and would like to speak with an attorney. Sgt. Owens advised defendant that no more questions would be asked, and the interview was over. Sgt. Owens and his colleague left the room. While defendant was talking to Sgt. Owens, a lunch for him was brought to the detective bureau. After Sgt. Owens left, Det. Hall took the lunch to defendant in the interview room.  When he entered the interview room, Det. Hall observed that defendant was crying. He gave defendant the lunch and then asked him, "Is everything okay?" Det. Hall explained that he asked this question because he had developed a rapport with defendant and was concerned about him. He also testified that he was not attempting to ask him about the allegations.

Defendant said that "since the skeleton was out of the closet, I'd like to tell you my side of the story." Defendant then told Det. Hall that one of his friends, whom he named and whom had previously been investigated by Det. Hall, had told defendant that Det. Hall was a good guy. Defendant's friend also told him to ask for Det. Hall when he got to the police station and that defendant should "talk to him, and don't lawyer up." Det. Hall testified: "He went on to say that since the skeleton is out of the closet, he wanted to tell me what happened. He says, you're a good guy. You treated me right. I want to tell you my side of the story."

Det. Hall told defendant that before he said anything, he needed to review defendant's *Miranda* rights with him. Defendant replied that he did not want "to do a Miranda." "He wanted what he told me to be off the record." Det. Hall told him there was no off the record. Det. Hall left the interview room to retrieve a *Miranda* form, re-entered the interview room, and placed the *Miranda* form in front of defendant.

9

> Defendant pointed to the second statement on the form, which states
> "anything you say can and will be used against you in a court of law,"
> and asked Det. Hall if that meant anything he said could be used against
> him. Det. Hall replied, "Yes, that's correct." Defendant said he did not
> want "to do a Miranda," he "just want[ed] to tell [him] what happened."
>
> Det. Hall told defendant to tell him what he had to say because
> "it seemed he was intent on telling me what he wanted to tell me."
> Defendant went on to admit that he had sex with the victim, and he
> detailed specific acts and locations of what occurred between him and
> the victim both in the City of St. Louis and in University City.

Resp't Ex. E at 3-6.

With regard to the second statement Edwards made to Det. Hall, the Missouri Court of

Appeals found that there was no question that Edwards had invoked his right to counsel, but held

that admission of the statement was appropriate because Edwards had initiated further discussions

with the police after requesting counsel, and Edwards had voluntarily, knowingly, and intelligently

waived the right he had invoked. *Id*. at 7-8. The Missouri Court of Appeals cited to the applicable

federal law,[2] and found as follows:

> The police are not required to cut off all contact with a suspect
> once he or she invokes his or her rights. Inquiries or statements relating
> to routine incidents of the custodial relationship will not "initiate"
> conversation in the sense in which that word was used in *Edwards*. In
> this case, Det. Hall was delivering lunch, observed defendant crying,
> and asked defendant if everything was okay. This inquiry did not
> constitute an attempt to elicit a confession from defendant about the
> abuse allegations. [Edwards'] response was an unforeseen result of Det.
> Hall's inquiry about whether everything was okay and was not the
> product of an interrogation. The police surely cannot be held
> accountable for the unforeseeable results of their words or actions.
> Moreover, the nature of [Edwards'] response demonstrates that [he]
> initiated further communication with Det. Hall. [Edwards] went into
> detail explaining why he specifically wanted to tell Det. Hall his side
> of the story and recounted that his friend had advised him to do so.

---

[2]   The Missouri Court of Appeals cited to *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-46 (1983); *Miranda v. Arizona*, 384 U.S. 436, 474 (1981); *Edwards v. Arizona*, 451 U.S. 476, 484-85 (1981); and *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

> [Edwards'] response evinced a willingness and a desire for a generalized discussion about the investigation.

Resp't Ex. E at 8-9 (internal citations and quotations omitted).

The Missouri Court of Appeals went on to find that Edwards' conduct constituted a valid

waiver of his *Miranda* rights, stating:

> The state also showed that defendant voluntarily, knowingly, and intelligently waived his previous invocation of the right to an attorney. Although defendant refused to complete a *Miranda* form before talking to Det. Hall in this encounter, the lack of a signed *Miranda* form is not dispositive. Waiver can be inferred from the actions and words of the person interrogated. A defendant may waive the *Miranda* rights by orally indicating a willingness to cooperate in police questioning without signing a written waiver. A defendant who is aware of and understands his rights and indicates a willingness to cooperate with police by answering their questions can be found to have waived the *Miranda* rights, even if he has refused to sign a waiver.
>     After Det. Hall delivered defendant's lunch and asked if everything was okay, defendant's words and actions signified a voluntary waiver of his right to counsel. Defendant explained that he wanted to tell Det. Hall his side of the story because he had consulted a friend who told him to seek out Det. Hall, who was a good guy, and to talk to him. Defendant's words indicated that he made a reasoned decision to talk to Det. Hall about the investigation. In addition, defendant had previously been apprised of his *Miranda* rights twice: once by Det. Hall the previous evening and once by Sgt. Owens earlier that day. Defendant had signed two waiver forms indicating that he knew and understood his rights. Accordingly, there was no question that defendant knew and understood his *Miranda* rights. Det. Hall told defendant that the conversation was not "off the record," and anything he said could be used against him. In these circumstances, defendant's insistence on telling Det. Hall his side of the story constituted a voluntary waiver of his *Miranda* rights.

Resp't Ex. E at 9-10 (internal citations and quotations omitted).

The Missouri Court of Appeals then turned to consider Edwards' written statement to Sgt.

Owens, and held that they did not need to reach a determination of whether the statement should

11

have been excluded, "because the trial court's refusal to exclude the statement would, at most constitute 'harmless error beyond a reasonable doubt' within the meaning of *Chapman v. California*, 386, U.S. 18 (1967)." *Id*. at 10.

> More specifically, the Missouri Court of Appeals found as follows:

> > Defendant's written statement to Sgt. Owens was: "I made a big mistake with [the victim] and I'm very sorry for what I did with her, <u>not by FORCE</u>." Because this statement did not include anything that was not in defendant's second statement to Det. Hall in which he explained his acts and the lack of force in detail, any error in admitting into evidence the written statement to Sgt. Owens was non-prejudicial and harmless beyond a reasonable doubt. Evidence challenged on constitutional grounds that is cumulative of other, properly admitted evidence cannot have contributed to a defendant's conviction and so is harmless beyond a reasonable doubt.

Resp't Ex. E at 10-11 (internal citations and quotations omitted).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The admissibility of evidence is a matter of state law. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). "To meet this burden, a habeas petitioner must show that absent the alleged impropriety the verdict probably would have been different." *Skillicorn v. Luebbers*, 475 F.3d 965, 972 (8th Cir. 2007). The privilege against self-incrimination clause of the Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself ...." U.S. Const. amend. V. The Fifth Amendment's exception from compulsory self-incrimination is protected by the Fourteenth Amendment against abridgment by the states. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

In *Miranda v. Arizona*, the Supreme Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings:  (1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning.  *Dickerson v. United States*, 530 U.S. 428, 435 (2000) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). The Supreme Court has stated that post-*Miranda*, "[c]onfessions remain a proper element in law enforcement, [and] [a]ny statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

The prosecution cannot use statements "whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. at 444. "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. "Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

 Furthermore, once an accused has invoked his right to have counsel present during interrogation, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his right." *Edwards*, 451 U.S. at 484. "[A]n accused . . . having expressed his desire to deal with the police

13

only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. at 484-85. However, once an accused initiates further communication with law enforcement, "nothing in the Fifth or Fourteenth Amendments would prohibit the police from merely listening to his voluntary volunteered statements and using them at the trial." *Id*. at 485. Also, initiation of communication by an accused can constitute behavior sufficient to waive the right to an attorney so long it was done voluntarily, knowingly, and intelligently. *See Miranda*, 384 U.S. at 444; *see also North Carolina v. Butler*, 441 U.S. 369, 373 (1979). Additionally, "[a]n otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that [any] constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). This doctrine can apply to the admission of an involuntary confession. *See Arizona v. Fulminante*, 499 U.S. 279, 309-11 (1991). To rely on this doctrine, the state must demonstrate that the challenged evidence did not contribute to the defendant's conviction. *Fulminante*, 499 U.S. at 296 (citing *Chapman*, 386 U.S. at 24).

The issue before this court is whether the Missouri state court was "unreasonable in applying [these] governing legal principle[s] to the facts of the case." *Dormire v. Wilkerson*, 249 F.3d 801, 805 (8th Cir. 2001) (citing *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000)). Based on binding precedent from the Supreme Court and the Eighth Circuit, the Court finds that the Missouri state court's decision regarding the admission of Edwards' statements was not unreasonable. In connection with Edwards' second statement to Det. Hall, the Court agrees with the conclusion of the Missouri Court of Appeals that the investigators did not improperly re-initiate an interrogation

14

of Petitioner. Det. Hall merely delivered a meal to Edwards, observed that he was crying, and asked Edwards whether he was okay.  This did not constitute an impermissible reinterrogation of Edwards. Det. Hall did nothing to solicit Edwards' subsequent statement in which he sought to tell Det. Hall his "side of the story," since the "skeleton was out of the closet." Furthermore, Det. Hall testified that he asked the question because he had developed a rapport with Edwards and was concerned about him, and was not attempting to ask him about the allegations with which he was charged. Nothing in the Constitution prohibits a police officer in Det. Hall's position "from merely listening to [Edwards'] voluntary, volunteered statements and using them against him at the trial." *Edwards*, 451 U.S. at 485.

The Court further agrees with the Missouri Court of Appeals' determination that Edwards voluntarily, knowingly, and intelligently waived his previous invocation of the right to an attorney. As noted by the Missouri court, a defendant may waive his *Miranda* rights by "orally indicating a willingness to cooperate in police questioning without signing a written waiver." Resp't Ex. E at 9. *See Butler*, 441 U.S. at 373 (although express written waiver is "strong proof of the validity of that waiver . . . waiver can be clearly inferred from the actions and words of the person interrogated"). Here, Edwards was repeatedly informed of his *Miranda* rights, and after Det. Hall told Petitioner that the conversation could not be had "off the record" and that anything he went on to say could be used against him at trial, Edwards persisted, insisting that he wanted to tell Det. Hall his "side of the story." Resp't Ex. E at 10. The Court finds that the Missouri Court of Appeals' determination that Petitioner's actions and words constituted a voluntary waiver of his *Miranda* rights was not an unreasonable application of clearly established federal law.

15

As to the statement made to Sgt. Owens, the Court finds reasonable the Missouri Court of Appeals' determination to not reach the question of whether the statement was properly admitted, as the admission of the statement would, at most, constitute "harmless error beyond a reasonable doubt" within the meaning of *Chapman v. California*, 386 U.S. 18 (1967). The *Chapman* test for harmlessness is the proper one to be used on direct review, and the Missouri Court of Appeals correctly and reasonably applied that standard in this case. *Chapman*, 386 U.S. at 24; *see also Arizona v. Fulminante*, 499 U.S. 279, 303 (1991) (The admission of an involuntary confession at trial is subject to harmless error analysis). As noted above, the state court found that Edwards' statement to Sgt. Owens was cumulative of his substantially similar yet much more detailed statement to Det. Hall, which was properly admitted, and thus, the admission of his statement to Sgt. Owens did not contribute to Edwards' conviction in any meaningful way.

A federal court sitting in habeas corpus review of a state court's finding of harmlessness employs the harmlessness test stated in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), which states that the reviewing court should determine that a putated error is harmless unless the error "had substantial and injurious effect or influence in determining the jury's verdict." *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) ) (A federal court sitting in habeas "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*," regardless of whether the state court properly applied the *Chapman* standard). The *Brecht* standard "subsumes" the AEDPA/*Chapman* standard, and is a more difficult standard for a petitioner to meet. *Id*. at 120. To determine the effect of any error that may have occurred, the Court considers both the impact of the allegedly improperly admitted evidence and the overall weight of the evidence presented at trial. *See Brecht*, 507 U.S. at 639. In

16

implementing this standard, a federal judge is instructed to ask whether she "think[s] that the error substantially influenced the jury's decision." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). If the court finds itself in "grave doubt" about whether a trial error is harmless, it must grant habeas relief. *Id*. at 445.

As observed by the Missouri Court of Appeals, Edwards' statement to Sgt. Owens was merely cumulative, as it did not include any information that was not in his more detailed admission to Det. Hall. Furthermore, the weight of evidence presented at trial demonstrating Edwards' guilt was overwhelming. First, and most saliently, the victim testified at length and in great detail regarding the sexual assaults she had experienced at the hands of Petitioner. Resp't Ex. A at 577-612. The jury heard testimony from the pediatric medical social worker at St. Louis Children's Hospital regarding what she observed after the victim was taken to the hospital after initially reporting the sexual abuse. *Id*. at 362-381. The jury also heard testimony from various police officers who were involved in the investigation of the crimes committed by Petitioner. All this testimony served to corroborate the victim's testimony, and it was more than sufficient to have convinced any reasonable juror of Petitioner's guilt beyond a reasonable doubt, without any need to rely on the statement Edwards made to Sgt. Owens.

The Court concludes, in light of the weight of the other evidence of Edwards' guilt and the cumulative nature of the statement, that the admission of the statement was, at most, harmless error that did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 637. Because the state court's decision regarding the admission at trial of the two statements challenged by Edwards was not contrary to, or an unreasonable application of,

17

clearly established federal law, the undersigned recommends that Ground One of Edwards' petition be denied.

### B. Ground Two

In Ground Two, Edwards argues that that the trial court erred by admitting into evidence information about his guilty plea in the City Case. Edwards contends that the admission into evidence of his prior guilty plea involving the same victim and similar offenses constituted improper admission of prior bad-acts evidence. Respondent argues, and the Court agrees, that this claim is defaulted, because while Petitioner did appeal to the Missouri Court of Appeals alleging that it was erroneous to admit evidence of his plea, he based his argument on the allegation that his guilty plea was not an informed plea, and its admission violated his right against self-incrimination. Because Edwards did not present a prior bad-acts claim in his direct appeal, that claim is now defaulted, and Petitioner does not offer any reason to excuse the default. However, in any event, the claim is without merit.

Normally, an asserted violation of state evidentiary law, without more, is not enough to warrant federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Middleton v. Roper*, 498 F.3d 812, 820 (8th Cir. 2007) ("[H]abeas review does not lie to correct alleged errors of state law."). However, an incorrect evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, provide grounds for federal habeas relief. *See Montana v. Egelhoff*, 518 U.S. 37, 53 (1996) ("erroneous evidentiary rulings can . . . rise to the level of a due process violation"); *Guinn v. Kemna*, 489 F.3d 351, 354 (8th Cir. 2007). However, to trigger such relief, the state court's application of state law must be "so arbitrary or capricious as to constitute an independent due process . . . violation." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). The Supreme

18

Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (only actions that violate "fundamental conceptions of justice which lie at the base of our civil and political institutions" and that define "the community's sense of fair play and decency" are sufficient to violate due process) (citations omitted). The Court finds that the state court's decision in the instant case falls well outside these narrow confines.

Edwards does not identify any clearly established Supreme Court case law speaking directly to the admission of prior bad acts evidence. Indeed, the Supreme Court has expressly declined to determine "whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime." *Estelle*, 502 U.S. at 75 n.5. In the absence of any directly applicable governing rule, the Court asks whether the admission of evidence regarding Edwards' guilty plea was so arbitrary and capricious as to render his trial fundamentally unfair. The Court does not find this to be a close question. It is plain that the state court's allowance of the introduction of Edwards' guilty plea, whether or not it was an unarguably correct evidentiary ruling,[3] was well within the universe of plausible evidentiary rulings. It was not, therefore, so arbitrary or capricious as to work a denial of Edwards' constitutional right to a fair trial. Accordingly, the Court recommends that Ground Two be denied.

### C.  Grounds Three and Four

In Grounds Three and Four, Edwards alleges ineffective assistance of his trial counsel. Specifically, in Ground Three Edwards contends that his trial counsel was ineffective due to her failure to call Shirley Grady to testify as a character witness during the penalty phase of his trial.

---

[3] The Court takes no position on whether it was, in fact, a correct ruling or not.

In Ground Four, Edwards similarly alleges that his trial counsel was ineffective in failing to call Angela Grady, Shirley's daughter, to testify as a character witnesses. Petitioner contends that Shirley and Angela Grady would have testified as to his "benevolent and caring nature," and his status as a working man with strong church ties, and that his trial counsel did not call them to testify even though Petitioner asked her to do so. Because the claims are substantially similar, the Court will address them together. Petitioner raised both of these claims in his post-conviction appeal and the Missouri Court of Appeals denied them on their merits.  Resp't. Ex. J.

"The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results." *Strickland v. Washington*, 466 U.S. 668, 685 (1984). "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id*. To succeed in a claim "that counsel's assistance was so defective as to require reversal of a conviction," a petitioner must establish (1) that the trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. *Id.* at 687-88.

The "performance" component of *Strickland* requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690.  The court must then examine the totality of the circumstances in order to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*.  In making this determination, the court should recognize that counsel is "strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. To satisfy the "prejudice" component of *Strickland*, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Such "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

It is important to note that "there is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in [a pre-determined] order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. It is unnecessary, therefore, to prove that counsel's performance fell below an objective standard of reasonableness before determining the presence or absence of resulting prejudice.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the [appeal], focusing on whether it is reasonably likely that the result would have been different absent the errors." *Williams*, 695 F.3d at 831 (citing *Strickland*, 466 U.S. at 696)). "To satisfy *Strickland*, the likelihood of a different result must be substantial, not just conceivable." *Id*. (internal quotation omitted). Second, under AEDPA, the Court must give substantial deference to the state court's predictive judgment. *Id*. Therefore, "[s]o long as the state court's decision was not "contrary to" clearly established federal law, the remaining question under the "unreasonable application" clause of § 2254(d) is "whether the state court's determination under the *Strickland* standard is

unreasonable, not merely whether it is incorrect." *Id.* at 831 (*citing Harrington*, 562 U.S. 86 at 101). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102.

Both the post-conviction motion court and the Missouri Court of Appeals denied Edwards' claims that his trial counsel was ineffective in failing to call either Shirley or Angela Grady as character witnesses. (Resp't Ex. H; Resp't Ex. J.) When applying *Strickland* to claims involving an attorney's choice to exclude the testimony of certain potential witnesses, a court must bear in mind the principle that trial counsel's failure to call witnesses is presumed to be reasonable trial strategy. "Decisions relating to witness selection are normally left to counsel's judgment and 'this judgment [should not] be second-guessed by hindsight.'" *Williams v. Armontrout*, 912 F.2d 924, 934 (8th Cir. 1990) (quoting *Frank v. Brookhart*, 877 F.2d 671, 674 (8th Cir. 1989)). An attorney's decision not to call a particular witness must be viewed from the perspective of counsel at the time the decision was made. *U.S. v. Williams*, 562 F.3d 938, 941 (8th Cir. 2009). To establish prejudice from counsel's failure to call a potential witness, "a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." *Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001) (quotations omitted).

A review of the record shows that the Missouri Court of Appeals did not apply *Strickland* to the facts of this case in an objectively unreasonable manner. The Missouri Court of Appeals properly noted that the *Strickland* analysis applied. Resp't Ex. J, at 6. The Missouri Court of Appeals reviewed the record and found that it refuted Petitioner's claim that trial counsel was ineffective in choosing to not have either Angela or Shirley Grady testify at trial. *Id*. at 7. It further found that Petitioner failed to demonstrate that their testimony would have affected his sentence,

because their testimony would have been "duplicative" of Edwards' own testimony, and therefore Petitioner was not prejudiced by their failure to testify. *Id*. This was a reasonable conclusion in light of the record.

After reviewing the relevant portions of the record, the undersigned finds that it contains ample support for the Missouri Court of Appeals' conclusions.  Edwards testified that he had been a truck driver for over thirty years, had worked as a pastor for several churches, had always provided for his family, and had never before been arrested. Both Shirley and Angela Grady testified at Edwards' evidentiary hearing before the post-conviction motion court, and stated that they would have described Petitioner in similar terms.  Additionally, Shirley Grady testified that she would have testified specifically that Edwards "loved children," and that he "taught Sunday school because he liked to teach and mentor the children," and he often took them to the park, gave them money, and bought them clothes. *Id*. at 5. Her proposed testimony is worryingly reminiscent of the victim's description of grooming behaviors engaged in by Edwards during the time he was abusing her. It is not surprising, then, that Petitioner's counsel chose not to have the jury hear testimony about Edwards' eagerness to work closely with children. Indeed, the Missouri Court of Appeals noted as much, stating that "[i]n light of the charges and evidence against him, it is likely the jury would have found Shirley Grady's testimony regarding [Edwards'] child mentoring to be more disturbing than mitigating." *Id*. at 8. The Court finds that trial counsel's decision not to call Shirley or Angela Grady as witnesses represented reasonable trial strategy, and thus falls within the "wide range of professionally competent assistance" sanctioned by *Strickland*, and the Missouri Court of Appeals reasonably applied that standard when it reached the same conclusion.

23

### D.   Ground Five

In Edwards' fifth ground for relief, he contends that his rights under the Double Jeopardy Clause were violated by his conviction in the County Case for the same offenses to which he pleaded guilty in the City Case. Respondent argues, and the Court agrees, that the doctrine of procedural default precludes consideration by this Court of Petitioner's double jeopardy claims because he did not properly present them to the state courts, and the record shows no excuse for this default.

Petitioner, in his traverse, insists that the claim is not defaulted. Although it is not entirely clear, the Court infers that he is asserting that this claim is not defaulted because the state court was presented with an opportunity to consider the claim, as Edwards litigated this same issue in his Rule 91 state habeas proceeding, in which the Washington County Circuit Court determined the claim to be without merit.  However, if that is indeed Petitioner's position, he is mistaken, as the Missouri courts have stated:

> A person who has suffered criminal conviction is bound to raise all challenges thereto timely and in accordance with the procedures established for that purpose. To allow otherwise would result in a chaos of review unlimited in time, scope, and expense. In accordance with our previous decisions, habeas corpus is not a substitute for appeal or post-conviction proceedings. Habeas corpus [under Rule 91] may be used to challenge a final judgment after an individual's failure to pursue appellate and post-conviction remedies only to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results.

*State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. 1993).

Petitioner's claim is properly raised at the state level on direct appeal or on motion for post-conviction relief. *See, e.g., State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. 1998) (double jeopardy

claim properly raised on direct appeal). Because Petitioner did not raise this ground at the appellate level, and because Rule 91 habeas corpus is not a substitute for appellate proceedings in Missouri state court, Ground Five is procedurally barred. Additionally, Petitioner has not argued any basis for avoiding this procedural bar by demonstrating legally sufficient cause for the default and actual prejudice resulting from the same.

Nevertheless, Congress has authorized courts to consider and dismiss procedurally barred grounds if a court concludes that they are without merit. *See* 28 U.S.C. § 2254(b)(2). The undersigned concludes that Ground Five is without merit. The Double Jeopardy Clause protects against "a second prosecution for the same offense after conviction," and "multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). Convictions for multiple counts of the same statute do not violate the Double Jeopardy Clause if the actual underlying acts are different. Petitioner argues that he was convicted and punished twice for the exact same offenses involving the exact same victim. However, that is simply not correct. Although the City Case and the County Case did involve the same victim and similar crimes, the City Case involved entirely different acts, committed nearly a year prior to the acts charged in the County Case, in an entirely different location. Petitioner was not convicted twice for the same offenses, and there is clearly no Double Jeopardy violation in this instance. The undersigned recommends that Ground Five be denied.

### IV.    Conclusion

Based on the foregoing, the undersigned recommends that Edwards' request for relief pursuant to 28 U.S.C. § 2254 should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED**.  (Doc. 4).

**IT IS FURTHER RECOMMENDED** that this case be **DISMISSED**.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of the time for good cause is obtained. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Dated this 3rd day of June, 2019.


 /s/ Nannette A. Baker_____
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE